UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHIREEN WRIGLEY, | NO. CIV. 2:10-703 WBS EFB |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| NORMA AQUAVIVA, in her personal capacity; DOROTHY SWINGLE, in her personal capacity; STAN ARMASKUS, in his personal capacity; MICHAEL D. MCDONALD, in his personal capacity; JOHN NEPOMECENO, in his personal capacity; ANTHONY R. THOMPSON, in his personal capacity; the CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, and DOES 1-20, | |
| Defendants. | |

----oo0oo----

Plaintiff Shireen Wrigley filed this action on March 24, 2010 against defendants Norma Aquaviva, Dorothy Swingle, Stan Armaskus, Michael D. McDonald, John Nepomeceno, Anthony R. Thompson, and the California Department of Corrections and

1

1  Rehabilitation ("CDCR").  (Docket No. 1.)  Defendant CDCR moves
2  to dismiss plaintiff's Complaint pursuant to Federal Rules of
3  Civil Procedure 12(b)(1) for lack of subject matter jurisdiction
4  and 12(b)(6) for failure to state a claim upon which relief can
5  be granted.  (Docket No. 7.)

I.   Factual and Procedural Background

Plaintiff worked at High Desert State Prison ("HDSP") as a licensed independent nurse practitioner from November 2007 to May 11, 2009.  (Compl. ¶¶ 14, 24.)  Due to her position, plaintiff became part of the CDCR Division of Correctional Health Care Services ("DCHCS").  (Id. ¶ 14.)  Plaintiff provided acute medical care to prison inmates at HDSP.  (Id. ¶ 15.)  In June 2008, plaintiff was assigned to the C-yard clinic, where she worked with Correctional Officer Vicki Berg.  (Id. ¶ 16.)  Berg would escort patients to and from their cells and provide security while the patients were seen by medical staff.  (Id.) Plaintiff and Berg became roommates in October 2008 and in early November 2008 they became domestic partners.  (Id.)

On November 24, 2008, Berg was allegedly reassigned to a temporary position as a Correctional Counselor and Correctional Officer McConnell was temporarily assigned to the medical escort position previously occupied by Berg.  (Id. ¶ 17.)  Berg bid on several permanent positions on February 24, 2009, including the permanent medical escort officer position at the C-yard clinic. (Id. ¶ 18.)  Berg's bid for the C-yard clinic position was allegedly successful and she was to report on March 3, 2009. (Id.)  Because of the temporary swap with McConnell, Berg could not report until March 23, 2009.  (Id.)  On March 18, 2009, Berg

2

was allegedly informed that she could not take the C-yard position and on April 3, 2009 she was informed that the decision was made because it would violate the prison's "no fraternization" rule that prevents those in a relationship from working in "close proximity" to each other. (Id. ¶ 19.) Associate Warden Armaskus allegedly reviewed Berg's file and discovered she was a registered Domestic Partner with plaintiff, and believed that the medical escort position at the C-yard would put Berg in close proximity with plaintiff. (Id.) Plaintiff alleges that she and Berg would not work in "close proximity" to each other at the C-yard position. (Id.)

Berg filed a union grievance on April 10, 2009, alleging, inter alia, that the HDSP "no fraternization" policy was not enforced against heterosexuals. (Id. ¶ 20.) Plaintiff alleges that on April 27, 2009 Aquaviva asked Thompson to write a false and defamatory memorandum regarding plaintiff. (Id. ¶ 21.) Plaintiff alleges Thompson wrote the memo based solely on information provided by McConnell who is a friend of Thompson's. (Id.) Plaintiff alleges that Thompson published the memo to Aquaviva who in turn published it to plaintiff's supervisor, Dr. Swingle, Dr. Nepomeceno, and others. (Id.) Swingle allegedly told plaintiff about the memo on May 6, 2009, and plaintiff requested and was given a copy of the memo so that she could rebut the statements made therein. (Id.)

Plaintiff alleges that on May 7, 2009, Swingle told her that Aquaviva was upset plaintiff had a copy of the memo and that Aquaviva wanted to meet with plaintiff. (Id. ¶ 22.) On May 8, 2009, plaintiff alleges she was summoned to Swingle's office

3

where Aquaviva asked her why she distributed the memo to others. (Id. ¶ 23.) Plaintiff denies distributing the memo. (Id.) After leaving the meeting, plaintiff allegedly retrieved two voicemail messages: one indicating plaintiff was terminated from her position at HDSP and another sent half an hour after the first stating she was not terminated. (Id.) On May 11, 2009, plaintiff was allegedly informed by Nepomeceno that she had been permanently reassigned to B-yard clinic. (Id. ¶ 24.) Plaintiff alleges that later that day she was informed by Swingle that she was being terminated due to her "abrasive" demeanor. (Id.) The next day Berg was allegedly informed she could have the medical escort position at C-yard. (Id.)

Plaintiff alleges four causes of action against seven defendants. CDCR moves to dismiss plaintiff's fourth cause of action for defamation, which is the only cause of action alleged against it. (Docket No. 7.)

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely

4

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57).

    A.    California Government Code section 818.8

California Government Code section 818.8 provides that "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."  Cal. Gov't Code § 818.8 (West 2010).  The Government Code does not define "misrepresentation," but the California Supreme Court has limited the application of section 818.8 primarily to "the invasion of interests of a financial or commercial character, in the course of business dealings" and noted that misrepresentation "has been identified with the common law action of deceit." Johnson v. California, 69 Cal. 2d 782, 799-800 (1968) (quoting United States v. Neustadt, 366 U.S. 696, 711 n.26 (1961) (finding the government immune under a federal statute similar to section 818.8 for an alleged misrepresentation) (internal quotation marks omitted)).

The Legislative Committee Comments to section 818.8 state that "[t]his section provides public entities with an absolute immunity from liability for negligent or intentional misrepresentation."  Cal. Law Revision Com., Comment, Deering's Ann. Gov. Code § 818.8 (1982 ed.); see also Masters v. San Bernadino County Employees Ret. Ass'n, 32 Cal. App. 4th 30, 43 (1995) (holding that publicly entities are "wholly immune" for fraud and negligent misrepresentation by their employees).  The

5

Senate Committee on Judiciary Comment to section 818.8 gives an example of the sort of immunity imagined under section 818.8: "This section will provide . . . a public entity with protection against possible tort liability where it is claimed that an employee negligently misrepresented that the public entity would waive the terms of a construction contract requiring approval before changes were made." Johnson, 69 Cal. 2d at 800 (quoting Sen. Jour. p. 1889 (April 24, 1963) (internal quotations omitted)).

      Where the California courts have held government entities immune under section 818.8, the misrepresentations at issue were made "by individual employees acting contrary to the government entities' official policies." Bernard Osher Trust DTD, 3/8/88 v. City of Alameda, Cal., Nos. 09-1437, 08-4575, 2009 WL 2474716, at *5 (N.D. Cal. Aug. 11, 2009) (citing cases); see, e.g., Tokeshi v. State of Cal., 217 Cal. App. 3d 999 (1990) (immunity where employees instructed farmers to spray their crops with pesticides only to later prohibit farmers from selling crops because of pesticide residue); Harshbarger v. City of Colton, 197 Cal. App. 3d 1335 (1988) (city immune for employees' intentional misrepresentation to homeowners that residence under construction complied with code standards). Burden v. County of Santa Clara, 81 Cal. App. 4th 244 (2000), is not contrary to this line of cases. Id. (county immune for statements made during the hiring process that misrepresented the terms of employee's employment).

      Not all misrepresentations by public entities, however, are subject to immunity under section 818.8. See, e.g., Johnson, 69 Cal. 2d 782 (no immunity for failure to warn foster parents of

6

violent past of parolee foster child); <u>Bastian v. County of San Luis Obispo</u>, 199 Cal. App. 3d 744 (1988) (no immunity for police officer staging of crime scene); <u>Connelly v. State of California</u>, 3 Cal. App. 3d 744 (1970) (no immunity for gratuitously providing information to plaintiff in negligent manner that results in property damage).

Defamation is the tort of making an intentional false statement to another--either by libel or slander--that damages the subject's reputation. See <u>Raghavan v. Boeing Co.</u>, 133 Cal. App. 4th 1120, 1132 (2005).  The "legislature did not intend to grant immunity" for reputational harm resulting from defamation. <u>ECO Resc., Inc. v. City of Rio Vista</u>, No. 05-2556, 2006 WL 947763, at *2 (E.D. Cal. Apr. 12, 2006); see <u>Talada v. City of Martinez</u>, No. 08-2771, 2009 WL 382758, at *8 (N.D. Cal. Feb. 12, 2009) (stating that a defamation claim "is not financial or commercial in nature and, therefore, defendants are not entitled to the statutory immunity under Sections 818.8"); <u>Nadel v. Regents of Univ. of Cal.</u>, 28 Cal. App. 4th 1251, 1261 (1994) (suggesting case law has rejected an interpretation of 818.8 which would allow a statutory privilege or immunity for defamation).  CDCR's motion to dismiss for section 818.8 immunity will therefore be denied.

    B.   <u>California Government Code sections 815.2 and 820.2</u>

California Government Code § 820.2 provides that: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be

7

abused." Section 815.2(b) likewise states that: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

The California Supreme Court in Johnson adopted a working definition of "discretion" for purposes of section 820.2 liability that provided an "assurance of judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government." 69 Cal. 2d at 793; see id. at 794 (stating the correct inquiry is to "find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule" of immunity). The courts have drawn a distinction between those acts involved in the "planning" and "operational" functions of government, only the former of which can enjoy immunity. Caldwell v. Montoya, 10 Cal. 4th 972, 981 (1995). In Johnson, the court determined that there was no section 820.2 immunity because "to the extent that a parole officer consciously considers pros and cons in deciding what information, if any, should be given [to foster parents about the background of their parolee foster child], he makes such a determination at the lowest, ministerial rung of official action." Id. at 795-96.

Basic policy decisions in the workplace certainly include the hiring, disciplining, and firing of employees. See, e.g., Caldwell, 10 Cal. 4th at 988; Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1438 (1988) (stating that "the decision whether or not to initiate disciplinary proceedings and what discipline to impose" is within the supervisor's discretion and

1  "involves the exercise of analysis and judgement as to what is
2  just and proper under the circumstances and is not a purely
3  ministerial act").  For CDCR to be entitled to immunity under
4  section 820.2, Aquaviva and Thompson must have "consciously
5  exercised discretion in connection with" making the allegedly
6  defamatory statements.  Elton v. County of Orange, 3 Cal. App. 3d
7  1053, 1058 (1970) (citing Johnson, 69 Cal. 2d at 794-95).  In
8  either case, the burden is on CDCR to establish the existence of
9  the privilege or immunity.  See Johnson, 69 Cal. 2d at 795 n.8
10 ("[T]o be entitled to immunity the state must make a showing that
11 such a policy decision, consciously balancing risks and
12 advantages, took place.").

13      CDCR has not shown that Thompson's drafting of the
14 memorandum and giving it to Aquaviva constitutes a "basic policy
15 decision" entitled to immunity.  Rather, plaintiff alleges that
16 Aquaviva told Thompson to draft the memorandum, he did so, and
17 gave it to her.  Thompson's act, therefore, is nothing more than
18 the ministerial completion of a task assigned by his supervisor.
19 Nor has CDCR shown that Aquaviva's giving the memorandum to other
20 HDSP employees including plaintiff's supervisor was a "basic
21 policy decision" likewise entitled to immunity.  Unlike in
22 Kemmerer, neither Thompson nor Aquaviva were allegedly in
23 plaintiff's chain of command nor was the memorandum allegedly the
24 formal initiation of disciplinary proceedings against plaintiff.
25 Rather, CDCR admits that Thompson and Aquaviva were attempting to
26 bring potential violations of CDCR's nepotism policy to the
27 attention of those with authority over plaintiff.  (CDCR's Reply
28 (Docket No. 9.) 8.)  The mere reporting of violations of various

9

employment policies and behavior problems to plaintiff's supervisors is an "operational" act not entitled to immunity under sections 820.2 and 815.2.

### C. California Civil Code section 47(b)

There is no cause of action for defamation--either by libel or slander--where the publication alleged to be defamatory is privileged.  Cal. Civ. Code §§ 44-46 (West 2010).  Section 47(b) provides that "a privileged publication or broadcast is one made: . . . (b) In any [legislative or judicial proceeding, or] (3) in any other official proceeding authorized by law."  Id. § 47(b).

The California courts have interpreted 47(b) to encompass "communications to an official agency intended to induce the agency to initiate action," Lee v. Fick, 135 Cal. App. 4th 89, 96 (2005), and statements to governmental officials which may "preced[e] the initiation of formal proceedings." Slaughter v. Friedman, 32 Cal. 3d 148, 156 (1982); see Hagberg v. California Fed. Bank FSB, 32 Cal. 4th 350, 362-64 (2004) (citing cases).  Specifically, letters written in complaint to administrative officers and organizational bodies for the purpose of "prompt[ing] official action" are privileged under section 47(b).  Lee, 135 Cal. App. 4th at 96 (parent statements about basketball coach in formal complaint to school board are privileged); see Brody v. Montalbano, 87 Cal. App. 3d 309 (1075) (parent letters to board of education complaining about vice principal privileged); Martin v. Kearney, 51 Cal. App. 3d 309 (1975) (parent letters to principal complaining about teacher privileged).  The section 47(b) privilege has therefore been

10

given "an expansive reach," <u>Walter v. Kiousis</u>, 93 Cal. App. 4th 1432, 1440 (2001) (internal quotations and citation omitted), at least in part because it "is designed to provide the utmost freedom of communication between citizens and public authorities whose responsibility is to investigate wrongdoing." <u>Lee</u>, 135 Cal. App. at 96.

Section 47(b) privileges only those communications published with the intent to initiate <u>official</u> agency action. Plaintiff argues that because only the Professional Practices Executive Committee ("PPEC") had authority to initiate an investigation and recommend her termination, Thompson and Aquaviva's letter to Swingle and other HDSP supervisors could not have been an attempt to initiate an "official proceeding" under section 47. (<u>See</u> Compl. ¶ 28.) While it is immaterial that plaintiff was ultimately denied the process she was due under the PPEC, <u>Lee</u>, 135 Cal. App. at 97 ("[T]he privilege does not depend on what action, if any, the official agency takes on a complaint."), Thompson and Aquaviva's <u>purpose</u> in publishing the memorandum is determinative. In some circumstances it can be "obvious from the content of the letter" that it was an attempt to prompt official action. <u>See</u> <u>id.</u> at 97; (Compl. Ex. 1.). The content of the memorandum outlines plaintiff's workplace problems and concludes that she created a hostile working environment. (Compl. Ex. 1.) While the purpose cannot be divined solely by looking to the letter's intended recipient, <u>Lee</u>, 135 Cal. App. at 97, in this case it is significant that Aquaviva allegedly published the memorandum to multiple HDSP employees instead of to the PPEC. Therefore, from the allegations of the Complaint, it

1  is plausible that Thompson's and Aquaviva's purpose was not to
2  initiate any "official proceeding" against plaintiff, but to
3  defame the plaintiff.  The court therefore cannot conclude as a
4  matter of law that the memorandum is privileged.
5       Viewing the Complaint in the light most favorable to
6  the plaintiff, the section 47(b) privilege does not apply.
7  Defendant can bring a motion for summary judgment if discovery
8  uncovers more facts surrounding Thompson and Aquaviva's
9  publishing of the memorandum to Swingle, Nepomeceno, and other
10 HDSP employees rather than to the PPEC.
11      IT IS THEREFORE ORDERED that CDCR's motion to dismiss
12 be, and the same hereby is, DENIED.
13 DATED:  May 27, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE