1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                           ----oo0oo----

11

12   SHIREEN WRIGLEY, an                NO. CIV. 2:10-703 WBS EFB
     individual,
13
                Plaintiff,              MEMORANDUM AND ORDER RE:
14                                      MOTIONS TO DISMISS AND TO
          v.                            STRIKE
15
     NORMA AQUAVIVA, in her
16   personal capacity; DOROTHY
     SWINGLE, in her personal
17   capacity, STAN ARMASKUS, in
     his personal capacity, MICHAEL
18   D. MCDONALD, in his personal
     capacity, JOHN NEPOMECENO in
19   his personal capacity, ANTHONY
     R. THOMPSON, in his personal
20   capacity, the CALIFORNIA
     DEPARTMENT OF CORRECTIONS AND
21   REHABILITATION and DOES 1-20.

22              Defendants.
     _____/
23

24                           ----oo0oo----

25          Plaintiff Shireen Wrigley brought this action against

26   defendants Norma Aquaviva, Dorothy Swingle, Stan Armaskus,

27   Michael D. McDonald, John Nepomeceno, Anthony R. Thompson, and

28   the California Department of Corrections and Rehabilitation

                                    1

("CDCR") arising out of plaintiff's employment with CDCR.
Presently before the court are defendants' motions to dismiss the
First Amended Complaint ("FAC") pursuant to Federal Rule of Civil
Procedure Rule 12(b)(6) for failure to state a claim upon which
relief can be granted and to strike plaintiff's state law claim
pursuant to California's anti-Strategic Lawsuits Against Public
Participation ("anti-SLAPP") statute, California Civil Procedure
Code § 425.16.

I.    Factual and Procedural Background

        Plaintiff worked at High Desert State Prison ("HDSP")
as a licensed independent nurse practitioner from November of
2007 to May 11, 2009.  (FAC ¶¶ 14, 26.)  Due to her position,
plaintiff became part of the CDCR Division of Correctional Health
Care Services ("DCHCS").  (Id. ¶ 14.)  Plaintiff provided acute
medical care to prison inmates at HDSP.  (Id. ¶ 15.)  In June of
2008, plaintiff was assigned to the C-yard clinic, where she
worked with Correctional Officer Vicki Berg.  (Id. ¶ 16.)  Berg
would escort patients from and to their cells and provide
security while the patients were seen by medical staff.  (Id.)
Plaintiff and Berg became roommates in October of 2008 and in
early November of 2008 they became domestic partners.  (Id.)

        On November 24, 2008, Berg was allegedly reassigned to
a temporary position as a Correctional Counselor; Correctional
Officer McConnell was temporarily assigned to the medical escort
position previously occupied by Berg.  (Id. ¶ 17.)  Berg bid on
several permanent positions on February 24, 2009, including the
permanent medical escort officer position at the C-yard clinic.
(Id. ¶ 18.)  Berg's bid for the C-yard clinic position was

2

allegedly successful and she was to report on March 3, 2009.
(Id.)  Because of the temporary swap with McConnell, Berg could
not report until March 23, 2009.  (Id.)  On March 18, 2009, Berg
was allegedly informed that she could not take the C-yard
position and on April 3, 2009, she was informed that the decision
was made because it would violate the prison's "no
fraternization" rule that prevents those in a relationship from
working in "close proximity" to each other.  (Id. ¶ 19.)
Associate Warden Armaskus allegedly reviewed Berg's file and
discovered she was a registered Domestic Partner with plaintiff,
and believed that the medical escort position at the C-yard would
put Berg in close proximity with plaintiff.  (Id.)  Plaintiff
alleges that she and Berg would not have worked in "close
proximity" to each other at the C-yard.  (Id.)

        Berg filed a union grievance on April 10, 2009,
alleging, inter alia, that the HDSP "no fraternization" policy
was not enforced against heterosexuals.  (Id. ¶ 21.)  Plaintiff
alleges that Armaskus then asked Thompson to write a false and
defamatory memorandum to the Health Care Manager, defendant
Aquaviva, regarding plaintiff.  (Id. ¶ 22.)  Plaintiff alleges
Thompson wrote the memorandum based on information provided by
McConnell, who is a friend of Thompson's.  (Id.)  Plaintiff
alleges that Thompson published the memorandum to Armaskus, who
in turn published it to Aquaviva, who in turn published it to
plaintiff's supervisor, Dr. Swingle, who published it to Dr.
Nepomeceno.  (Id.)  Dr. Swingle allegedly told plaintiff about
the memorandum on May 6, 2009, and plaintiff requested and was
given a copy of the memorandum so that she could rebut the

1  statements made therein.  (<u>Id.</u> ¶ 23.)

2          Plaintiff alleges that on May 7, 2009, Swingle told her

3  that Aquaviva was upset that plaintiff had a copy of the

4  memorandum and that Aquaviva wanted to meet with plaintiff.  (<u>Id.</u>

5  ¶ 24.)  On May 8, 2009, plaintiff alleges she was summoned to

6  Swingle's office, where Aquaviva asked her why she distributed

7  the memorandum to others.  (<u>Id.</u> ¶ 25.)  Plaintiff denies

8  distributing the memorandum.  (<u>Id.</u>)  After leaving the meeting,

9  plaintiff allegedly retrieved two voicemail messages: one

10  indicating that plaintiff was terminated from her position at

11  HDSP and another sent half an hour after the first stating she

12  was not terminated.  (<u>Id.</u>)  On May 11, 2009, plaintiff was

13  allegedly informed by Nepomeceno that she had been permanently

14  reassigned to B-yard clinic.  (<u>Id.</u> ¶ 26.)  Plaintiff alleges that

15  later that day she was informed by Swingle that she was being

16  terminated because she "was too abrasive."  (<u>Id.</u>)  The next day

17  Berg was allegedly informed she could have the medical escort

18  position at C-yard.  (<u>Id.</u> ¶ 27.)

19          Plaintiff filed this suit on March 24, 2010.  (Docket

20  No. 1.)  CDCR's motion to dismiss the defamation claim against it

21  was denied on May 28, 2010.  (Docket No. 12.)  Before the court

22  ruled on defendants' original motions to dismiss and to strike

23  the Complaint, the court gave plaintiff leave to file an amended

24  complaint.  (Docket No. 28.)  Plaintiff filed the FAC (Docket No.

25  30) on August 30, 2010, alleging claims for (1) violations of the

26  Civil Rights Act, 42 U.S.C. § 1983, based on alleged procedural

27  due process violations by defendants Aquaviva, Swingle, Armaskus,

28  McDonald, and Nepomeceno; (2) violations of § 1983 based on

4

alleged equal protection violations by defendants Aquaviva and
Armaskus; and (3) defamation by CDCR, Aquaviva, Thompson, and
Armaskus.   Defendants now move to dismiss the FAC pursuant to
Federal Rule of Civil Procedure 12(b)(6) and to strike the
defamation claim under California Civil Procedure Code § 425.16.

II.  <u>Discussion</u>

        On a motion to dismiss, the court must accept the
allegations in the complaint as true and draw all reasonable
inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416
U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.</u>
<u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322
(1972).  "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  <u>Ashcroft v.</u>
<u>Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell</u>
<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  The Supreme
Court has explained that the pleading standard rests on two
principles.  First, "the tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable
to legal conclusions."  <u>Id.</u>  While showing an entitlement to
relief "does not require 'detailed factual allegations,' . . . it
demands more than an unadorned, the-defendant-unlawfully-harmed-
me accusation."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).  Second,
"only a complaint that states a plausible claim for relief
survives a motion to dismiss."  <u>Id.</u> at 1950.  If the pleadings
"do not permit the court to infer more than the mere possibility
of misconduct, the complaint has alleged--but it has not
'show[n]'--'that the pleader is entitled to relief.'"  <u>Id.</u>

1 (quoting Fed. R. Civ. P. 8(a)(2)).[1]

2     A.   Section 1983 Procedural Due Process Claim against

3          Aquaviva, Swingle, Armaskus, McDonald, and Nepomeceno

4          Section 1983 is not itself a source of substantive

5 rights, but merely provides a method for vindicating federal

6 rights that are conferred elsewhere.  Graham v. Connor, 490 U.S.

7 386, 393-94 (1989).  Plaintiff brings a § 1983 claim based on the

8 deprivation of her procedural due process rights under the

9 Fourteenth Amendment.

10          "The doctrine of qualified immunity protects government

11 officials 'from liability for civil damages insofar as their

12 conduct does not violate clearly established statutory or

13 constitutional rights of which a reasonable person should have

14 known.'"  Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808, 815

15 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

16 To determine whether an official is entitled to qualified

17 immunity, a court may begin with the question of whether,

18 "[t]aken in the light most favorable to the party asserting the

19 injury, [] the facts alleged show the officer's conduct violated

20 a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201

21 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)),

22

23          [1]   The parties have requested that the court take judicial
   notice of a large number of documents, most of which are not
24 judicially noticeable.  In general, a court may not consider
   items outside the pleadings on a motion to dismiss, but it may
25 consider items of which it can take judicial notice.  Barron v.
   Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).  The court gave the
26 parties the opportunity to treat the motion to dismiss as a
   motion for summary judgment by presenting all material pertinent
27 to the motion pursuant to Federal Rule of Civil Procedure 12(d),
   and defense counsel preferred not to do so.  Therefore, the court
28 excludes all matters outside the pleadings.  See Fed. R. Civ. P.
   12(d).

6

rev'd by <u>Pearson</u>, 129 S. Ct. at 818 (holding that the <u>Saucier</u>
two-step procedure for determining qualified immunity in which
the court must first determine whether there is a constitutional
violation is not mandatory).

Assuming there is a constitutional violation, the
second question the court should ask is whether the officer's
conduct violated a clearly established right.  <u>Id.</u>  Finally, if
the right is clearly established, the court should determine
whether a reasonable officer would know that his conduct violated
the clearly established right.  <u>See Anderson v. Creighton</u>, 483
U.S. 635, 640 (1987).  If the court finds the constitutional
right was clearly established such that a reasonable officer
would be aware that his or her conduct was unconstitutional, then
the officer is not entitled to qualified immunity.  <u>Pearson</u>, 129
S. Ct. at 816.

Here, the court need not decide the question of whether
there was a constitutional violation.  <u>See Pearson</u>, 129 S. Ct. at
819 (noting that courts may want to bypass the first <u>Saucier</u> step
when the constitutional decision would rest on an "uncertain
interpretation of state law"); <u>id.</u> at 821 ("Adherence to
<u>Saucier</u>'s two-step protocol departs from the general rule of
constitutional avoidance . . . .").  Thus, the court now
considers whether defendants' actions violated a clearly
established right.

"To establish a violation of procedural due process a
plaintiff must demonstrate: (1) a deprivation of a
constitutionally protected liberty or property interest, and (2)
a denial of adequate procedural protections."  <u>Tutor-Saliba Corp.</u>

7

v. City of Hailey, 452 F.3d 1055, 1061 (9th Cir. 2006) (citing Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998)).  A government employee has a constitutionally protected property interest in continued employment when the employee has a "legitimate claim of entitlement" to the job.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); see Perry v. Sindermann, 408 U.S. 593, 602 (1972).  Laws, rules or understandings derived from independent sources such as state law create such claims of entitlement.  Roth, 408 U.S. at 577.  However, a "unilateral expectation" that employment will continue does not create a property interest.  Id.

        If under state law, employment is at-will, then the claimant has no property interest in the job.  See Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993); see also Bishop v. Wood, 426 U.S. 341, 345 n.8 (1976).  "There is no right [solely] under the substantive due process clause to be terminable only for cause."  Portman, 995 F.2d at 902 n.1. However, where the employee has a legitimate claim of entitlement to termination only for cause, he or she has "a property interest which [is] entitled to constitutional protection."  Bishop, 426 U.S. at 345 n.8.

        "[T]he sufficiency of the claim of entitlement must be decided by reference to state law."  Bishop, 426 U.S. at 344. Thus, the court must look to California law to determine whether plaintiff had a legitimate claim of entitlement to her job that could give rise to a procedural due process claim under federal law.  See San Bernadino Physicians' Servs. Med. Grp., Inc. v. San

8

1  Bernadino Cnty., 825 F.2d 1404, 1408-09 (9th Cir. 1987)

2  ("Although the underlying substantive interest is created by 'an

3  independent source such as state law,' federal constitutional law

4  determines whether that interest rises to the level of a

5  'legitimate claim of entitlement' protected by the Due Process

6  Clause." (quoting Memphis Light, Gas & Water Div. v. Craft, 436

7  U.S. 1, 9 (1978))).  "A property interest . . . cannot be

8  inferred from a consistent practice without some basis in state

9  law."  Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 223 n.9

10  (1985); see id. ("Absent a state statute or university rule or

11  'anything approaching a common law of re-employment,' however, we

12  held that [a university professor] had no property interest in

13  the renewal of his teaching contract." (citing Roth, 408 U.S. at

14  564)).

15          Under California law, it is clear that permanent state

16  employees possess a property interest in their job, guaranteed by

17  statute, with attendant due process rights in their continued

18  employment.  See Skelly v. State Personnel Bd., 15 Cal. 3d 194

19  (1975).  However, plaintiff admits that she does not have a

20  statutory right to employment, but claims to have a property

21  interest in her position as a nurse practitioner "under CDCR's

22  own regulations, policies and procedures that created mutually

23  explicit understandings that she could be terminated only for

24  cause."  (FAC ¶ 31.)  She alleges that she was a "licensed

25  independent nurse practitioner" and that her employment was

26  governed by "the regulations, policies, and procedures set forth

27  in the DCHCS's Health Care Professionals Orientation Manual,

28  other DCHCS policy, procedure and practice manuals, and the

9

1  CDRC's [sic] Operations Manual."  (<u>Id.</u> ¶ 14.)

2          California courts, and federal courts interpreting

3  California law, have come to completely contradictory results

4  regarding whether property interests in employment can be

5  established other than by statute in California.  Many courts

6  have held that only a statute, not a contract, can create a

7  property interest.  <u>See, e.g.</u>, <u>Bernstein v. Lopez</u>, 321 F.3d 903,

8  906 (9th Cir. 2003) ("Collecting California cases, we have

9  recognized this long-standing principle of California law and

10 held that neither an express nor an implied contract can restrict

11 the reasons for, or the manner of, the termination of public

12 employment provided by California statute." (citing <u>Portman</u>, 995

13 F.2d at 905)); <u>Nunez v. City of L.A.</u>, 147 F.3d 867, 872 (9th Cir.

14 1998) ("In California, the terms and conditions of employment are

15 generally 'fixed by the statute, rules or regulations creating

16 it, not by contract (even if one is involved).'" (quoting

17 <u>Williams v. L.A. Cnty. Dep't of Water & Power</u>, 130 Cal. App. 3d

18 677, 680 (2d Dist. 1982))); <u>Portman</u>, 995 F.2d at 905 ("Under

19 California law, the terms of <u>public</u> employment are governed

20 entirely by statute, not by contract, and hence 'as a matter of

21 law, there can be no express or implied-in-fact contract . . .

22 which restricts the manner or reasons for termination . . . .'"

23 (quoting <u>Summers v. City of Cathedral City</u>, 225 Cal. App. 3d

24 1047, 1065 (4th Dist. 1990))); <u>Miller v. State of Cal.</u>, 18 Cal.

25 3d 808, 813 (1977) ("[I]t is well settled in California that

26 public employment is not held by contract but by statute and

27 that, insofar as the duration of such employment is concerned, no

28 employee has a vested contractual right to continue in employment

beyond the time or contrary to the terms and conditions fixed by law."); Markman v. Cnty. of L.A., 35 Cal. App. 3d 132, 134 (2d Dist. 1973) ("The terms and conditions relating to employment by a public agency are strictly controlled by statute or ordinance, rather than by ordinary contractual standards . . . .").

Apparently the "well settled" California law is not quite so settled, considering that other cases have held that express and implied-in-fact contracts can give rise to a property interest. See, e.g., San Bernardino Physicians' Servs., 825 F.2d at 1408 ("Thus, a constitutionally protectible entitlement may arise from contractual language providing for discharge from employment only for 'cause,' or even from the mere fact that a contract provides for continued employment during a fixed term.") (citation omitted); Flores v. Von Kleist, --- F. Supp. 2d ----, No. 2:08-cv-02499 GEB JFM, 2010 WL 3582540, at *13 (E.D. Cal. Sept. 10, 2010) ("Under California law, an employment contract can expand the pre-removal rights of a government employee and give rise to a protectible property interest." (citing Jones v. Palm Springs United Sch. Dist., 170 Cal. App. 3d 518, 529 (4th Dist. 1985) ("school districts have the authority to grant pre-demotion rights to administrative employees during the term of their contracts"))); Walker v. N. San Diego Cnty. Hosp. Dist., 135 Cal. App. 3d 896, 901 (4th Dist. 1982) (there is a "fundamental principle that property interests protected by the due process provision of both the state and federal Constitution may arise from contract as well as from the language of a

statute.").[2]

The best explanation for the obvious contradiction in the cases is that California and federal courts may have seen the language in Roth and Perry referring to contract-created interests and assumed, without investigating, that those sorts of interests existed under California law.  See Walker, 135 Cal. App. 3d at 901 ("A term of employment set by contract has been recognized as a property right which the state cannot extinguish without conforming to the dictates of procedural due process." (quoting Perry, 408 U.S. at 601; Roth, 408 U.S. at 576; Williams v. County of L.A., 22 Cal.3d 731 (1978) (assuming without deciding that a contract could give rise to a property interest); Hostrop v. Bd. of Jr. Coll. Dist. No. 515, 523 F.2d 569 (7th Cir. 1975))).

Whatever the explanation, it is impossible to hold that

---

[2]    The court is mindful of the fact that contractual provisions giving a party procedural protection before termination may give rise to a breach of contract action without creating a property interest in employment.  See Bishop v. Wood, 426 U.S. 341, 345 n.8 (1976) ("[T]he ordinance may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures."); Portman v. Cnty. of Santa Clara, 995 F.2d 898, 906 (9th Cir. 1993) ("[I]nterference with a property interest in a pure benefit of employment [there, accumulated sick leave], as opposed to an interest in the tenured nature of employment itself, is an interest that can and should be redressed by a state breach of contract action and not a federal action under section 1983." (quoting Ramsey v. Bd. of Educ., 844 F.2d 1268, 1272 (6th Cir. 1988)) (second alteration in original)); San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernadino Cnty., 825 F.2d 1404, 1408 (9th Cir. 1987) ("It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim.  '[W]e must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts.'" (alteration in original) (footnote omitted) (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir. 1983))).

12

1  termination of a registry employee without due process, in a
2  state where government employment is generally held by statute
3  and the employee had at best a contract with a third party, is a
4  clearly established violation of federal law.  Even if it could
5  somehow be shown that plaintiff did have a property interest in
6  her employment, a reasonable person would not have known that
7  plaintiff's termination could constitute a due process violation.
8  See Blantz v. Cal. Dep't of Corr. & Rehab., No. 09cv2145-L, 2010
9  WL 3339404, at *4 (S.D. Cal. Aug. 24, 2010) ("[A] reasonable CDCR
10 officer would have believed that [a licensed independent
11 practitioner] did not have a property interest in her job and
12 that her due process rights were not violated when she was
13 terminated.").  Thus, plaintiff's procedural due process claim
14 will be dismissed on the ground that defendants are entitled to
15 qualified immunity.

16      B.   Section 1983 Equal Protection Claim against Aquaviva
17           and Armaskus

18      Plaintiff also brings a claim under § 1983 for an equal
19 protection violation, claiming that defendants Armaskus and
20 Aquaviva caused the publication of a memorandum about plaintiff
21 that led to her termination, which they would not have done to a
22 similarly-situated heterosexual.  The Equal Protection Clause of
23 the Fourteenth Amendment provides that "[n]o State shall . . .
24 deny to any person within its jurisdiction the equal protection
25 of the laws."  "The purpose of the equal protection clause of the
26 Fourteenth Amendment is to secure every person within the State's
27 jurisdiction against intentional and arbitrary discrimination,
28 whether occasioned by express terms of a statute or by its

13

improper execution through duly constituted agents." <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008) (quoting <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam)).

"To establish a § 1983 equal protection violation, [plaintiff] must show that the defendants, acting under color of state law, discriminated against [her] as [a] member[] of an identifiable class and that the discrimination was intentional." <u>Flores v. Morgan Hill Unified Sch. Dist.</u>, 324 F.3d 1130, 1134 (9th Cir. 2003).  Plaintiff has sufficiently alleged these elements and thus survives the motion to dismiss her claim for equal protection.

Defendants are not entitled to qualified immunity on plaintiff's equal protection claim.  Discrimination on the basis of sexual orientation is a clearly established violation of federal law.  <u>See</u> <u>Perry v. Schwarzenegger</u>, 704 F. Supp. 2d 921, 996 (N.D. Cal. 2010); <u>see also</u> <u>Elliot-Park v. Manglona</u>, 592 F.3d 1003, 1009 (9th Cir. 2010) ("[a]s early as 1990, we established the underlying proposition that such conduct violates constitutional rights: state employees who treat individuals differently on the basis of their sexual orientation violate the constitutional guarantee of equal protection." (quoting <u>Flores</u>, 324 F.3d at 1137) (alteration in original)).  A reasonable officer would certainly know that terminating an employee because of her sexual orientation would violate federal law.  Thus, defendants are not entitled to qualified immunity, and the court will deny defendants' motion to dismiss the claim.

C.   <u>Defamation Claim against CDCR, Aquaviva, Thompson, and</u>

14

1        Armaskus

2              "The tort of defamation 'involves (a) a publication

3    that is (b) false, (c) defamatory, and (d) unprivileged, and that

4    (e) has a natural tendency to injure or that causes special

5    damage.'"  Taus v. Loftus, 40 Cal. 4th 683, 720 (2007) (quoting 5

6    Witkin, Summary of Cal. Law (10th ed. 2005) Torts § 529, at 782).

7    Defendants argue that the memorandum was privileged under

8    California Code sections 47(b) and 47(c), the defendants are

9    immune under California Government Code section 821.6, the

10   defamation claim must be dismissed as a Strategic Lawsuit Against

11   Public Participation ("SLAPP"), and the Tort Claims Act precludes

12   plaintiff from bringing a claim against Armaskus.

13              1.   California Civil Code section 47(b)

14              California Civil Code section 47(b) provides that "a

15   privileged publication or broadcast is one made: . . . (b) In any

16   [legislative or judicial proceeding, or] (3) in any other

17   official proceeding authorized by law . . . ."  Cal. Civ. Code §

18   47(b).  On May 28, 2010, the court denied CDCR's motion to

19   dismiss the defamation claim as privileged under section 47(b).

20   (Docket No. 12.)  The court held that although intent to initiate

21   agency action can constitute an official proceeding for purposes

22   of the section 47(b) privilege, plaintiff's complaint

23   sufficiently alleged that the memorandum was not written or

24   published with that intent.  As the same standards apply to the

25   current motion, the court will once again deny defendants' motion

26   to dismiss the defamation claim as privileged under section

27   47(b).

28              2.   California Civil Code section 47(c)

15

California Civil Code section 47(c) provides that a "privileged publication or broadcast is one made":

> In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

Cal. Civ. Code § 47(c).  This privilege is a codification of the common interest privilege, pursuant to which the defendant bears the initial burden of demonstrating that the allegedly defamatory communication was made upon a privileged occasion, and the plaintiff then bears the burden of proving that the defendant made the statement with malice.  Lundquist v. Reusser, 7 Cal. 4th 1193, 1208 (1994).

Plaintiff does not dispute that the memorandum is covered by the section 47(c) privilege.  Internal memoranda regarding a worker's performance are certainly matters of common interest to the parties involved.  See Deaile v. Gen. Tel. Co., 40 Cal. App. 3d 841, 846 (2d Dist. 1974) (allegedly defamatory communications to fellow employees were protected by section 47 privilege); see also Rudwall v. Blackrock, Inc., No. C 06-2992, 2006 WL 3462792, *3 (N.D. Cal. Nov. 30, 2006).  Instead, plaintiff argues that the memorandum is excepted from the privilege because defendants maliciously published it.

To defeat the qualified privilege, plaintiff must show "actual malice," which can be established by "a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore

16

acted in reckless disregard of the plaintiff's rights." <u>Roemer</u> <u>v. Retail Credit Co.</u>, 44 Cal. App. 3d 926, 936 (1st Dist. 1975); <u>see</u> <u>Frommoethelydo v. Fire Ins. Exch.</u>, 42 Cal. 3d 208, 217 (1986).  Plaintiff must plead specific facts, beyond conclusory allegations of malice.  <u>Kacludis v. GTE Sprint Commc'ns Corp.</u>, 806 F. Supp. 866, 872 (N.D. Cal. 1992); <u>Robomatic, Inc. v. Vetco</u> <u>Offshore</u>, 225 Cal. App. 3d 270, 276 (2d Dist. 1990) ("A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him.").  Malice cannot be inferred from the communication.  Cal. Civ. Code § 48.

Plaintiff alleges that Armaskus "directed Tony Thompson to write a false and defamatory memorandum addressed to Norma Acquaviva [sic] regarding Plaintiff that placed Plaintiff in a false light and damaged Plaintiff's reputation" (FAC ¶ 22), "then publish[ed] it to Acquaviva [sic] with the intention that Plaintiff's medical staff privileges would be affected in some way so that the Berg grievance would never begin or end quickly, sparing him from having to further deal with the grievance." (<u>Id.</u> ¶ 40.)  Plaintiff also alleges that Aquaviva "indicated that Plaintiff 'had better shut her mouth if she wanted to keep her job'" and "wanted [Plaintiff's] head on a platter for making her nursing staff look bad." (<u>Id.</u> ¶ 50.)  These allegations are sufficient at the pleading stage to show Armaskus and Aquaviva's ill will toward plaintiff.  However, plaintiff alleges that Thompson wrote the memorandum "at the request and direction of Armaskus" (<u>id.</u> ¶ 48), and accuses him of "inadequate and/or reckless investigation." (<u>Id.</u> ¶ 50.)  These allegations are

1  insufficient to show malice on the part of Thompson, who

2  according to plaintiff was simply following orders by writing the

3  memorandum.  Accordingly, Thompson is covered by the section

4  47(c) privilege and the defamation claim will be dismissed as to

5  him.

6        3.  California Government Code section 821.6

7        California Government Code section 821.6 states: "A

8  public employee is not liable for injury caused by his

9  instituting or prosecuting any judicial or administrative

10 proceeding within the scope of his employment, even if he acts

11 maliciously and without probable cause."  Cal. Gov't Code §

12 821.6.  Although the section has primarily been applied to

13 immunize prosecuting attorneys and other similar individuals, it

14 is not restricted to legally trained personnel but applies to all

15 employees of a public entity.  Johnson v. City of Pacifica, 4

16 Cal. App. 3d 82, 85 (1st Dist. 1970).  Neither is the section

17 "limited to suits for damages for malicious prosecution, although

18 that is a principal use of the statute."  Kayfetz v. State of

19 Cal., 156 Cal. App. 3d 491, 497 (1st Dist. 1984).

20       Investigation of an employee can be considered part of

21 an "administrative proceeding" within the scope of the section.

22 Kemmerer v. Cnty. of Fresno, 200 Cal. App. 3d 1426, 1436-37 (5th

23 Dist. 1988); see also Paterson v. City of L.A., 174 Cal. App. 4th

24 1393, 1405 (2d Dist. 2009) ("[S]ection 821.6 extends to actions

25 taken in preparation for formal proceedings, including

26 investigation, which is an 'essential step' toward the

27 institution of formal proceedings." (quoting Javor v. Taggart, 98

28 Cal. App. 4th 795, 808 (2d Dist. 2002))).  However, taking the

18

facts in the light most favorable to plaintiff, the memorandum
was used privately by the defendants in an effort to cause
plaintiff's termination, and was never used as part of an
investigation or in preparation for formal proceedings.  The
court therefore cannot conclude as a matter of law that
defendants are immunized by section 821.6.

### 4.   Anti-SLAPP Special Motion to Strike

The California legislature enacted its anti-SLAPP
statute, Cal. Civ. Proc. Code § 425.16, to "allow early dismissal
of meritless first amendment cases aimed at chilling expression
through costly, time-consuming litigation." <u>Metabolife Int'l,
Inc. v. Wornick</u>, 264 F.3d 832, 839 (9th Cir. 2001).
"California's anti-SLAPP statute allows a defendant to move to
strike a plaintiff's complaint if it 'aris[es] from any act of
that person in furtherance of the person's right of petition or
free speech under the United States or California Constitution in
connection with a public issue.'" <u>Vess v. Ciba-Geigy Corp. USA</u>,
317 F.3d 1097, 1109 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code
§ 425.16(b)(1)); <u>see also</u> <u>Briggs v. Eden Council for Hope &
Opportunity</u>, 19 Cal. 4th 1106, 1123 (1999) (defendant "need <u>not</u>
separately demonstrate that the statement concerned an issue of
public significance").  The special motion to strike under the
anti-SLAPP statute is available to litigants proceeding in
federal court.  <u>Thomas v. Fry's Elecs., Inc.</u>, 400 F.3d 1206,
1206-07 (9th Cir. 2005).

"A court considering a motion to strike under the
anti-SLAPP statute must engage in a two-part inquiry." <u>Vess</u>, 317
F.3d at 1110.  First, "the defendant is required to make a prima

19

facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003).  Second, "[t]he burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her [] claim."  Id.

An "act in furtherance of a person's right of petition or free speech" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).  Plaintiff's defamation claim is based solely on the memorandum written by Thompson, which defendants believe was made in connection with an "official proceeding authorized by law."  Id. § 425.16(e)(1), (e)(2).

An internal investigation by a state law enforcement agency is an official proceeding authorized by law within the meaning of section 425.16.  Hansen v. Dep't of Corr. & Rehab., 171 Cal. App. 4th 1537, 1544 (5th Dist. 2008).  However, the court has previously found that as pled the memorandum did not constitute an "official proceeding" under the section 47(b) privilege.  Although the anti-SLAPP statute and the 47(b) privilege are not coextensive, courts may "look[] to the

litigation [47(b)] privilege as an aid in construing the scope of [the anti-SLAPP statute] with respect to the first step of the two-step anti-SLAPP inquiry." <u>Flatley v. Mauro</u>, 39 Cal. 4th 299, 323 (2006); <u>see</u> <u>Lee v. Fick</u>, 135 Cal. App. 4th 89, 96 (2d Dist. 2005) ("[T]he 'official proceeding[s]' provision of section 425.16, subdivision (e)(1) has language parallel to that contained in the 'official proceeding[s]' provision of Civil Code section 47, subdivision (b)."). Under section 47(b), "communications to an official agency intended to induce the agency to initiate action" are privileged, <u>Lee</u>, 135 Cal. App. 4th at 96, as are statements to governmental officials that may "precede the initiation of formal proceedings." <u>Slaughter v. Friedman</u>, 32 Cal. 3d 149, 156 (1982); <u>see</u> <u>Hagberg v. Cal. Fed. Bank FSB</u>, 32 Cal. 4th 350, 362-64 (2004) (citing cases). Similarly, "communications preparatory to or in anticipation of the bringing of an official proceeding are within the protection of section 425.16." <u>Hansen</u>, 171 Cal. App. 4th at 1544. However, section 425.16, like section 47(b), applies only to those communications intended to initiate an <u>official</u> proceeding.

Plaintiff argues that because only the Professional Practices Executive Committee ("PPEC") had authority to initiate an investigation, the memorandum, which was published to Aquaviva, then Swingle and possibly others, could not have been an attempt to initiate an "official proceeding." (<u>See</u> FAC ¶ 22, 24, 31.) While it is immaterial whether plaintiff was ultimately denied the process she was due under the PPEC, <u>Lee</u>, 135 Cal. App. 4th at 97 ("[T]he privilege does not depend on what action, if any, the official agency takes on a complaint."), defendants'

purpose in publishing the memorandum is determinative.  In some circumstances it can be "obvious from the content of the [writing]" that it was an attempt to prompt official action.  <u>Id.</u> at 97.  The memorandum stated that plaintiff created "a hostile work environment due to various actions on her part that were described as disrespectful and unprofessional." (FAC ¶ 48.) While the purpose cannot be divined solely by looking to the letter's intended recipient, <u>Lee</u>, 135 Cal. App. 4th at 97, in this case it is significant that Aquaviva allegedly published the memorandum to Swingle instead of to the PPEC.

Plaintiff has alleged that the memorandum was not part of an internal investigation nor was it intended to initiate such an investigation.  The court has already found that it is plausible that defendants' purpose was not to initiate any "official proceeding" against plaintiff, but to defame the plaintiff.  Defendants have not demonstrated a prima facie case that the memorandum was an act in furtherance of their right of petition or free speech.  Thus, the court finds that plaintiff's defamation claim does not arise from an official proceeding authorized by law, and defendants' anti-SLAPP motion will be denied.

### 5.   Tort Claim Against Armaskus

Under the Tort Claims Act, Cal. Gov't Code §§ 810-998.3, a plaintiff may not maintain an action for money damages against a public entity unless a written claim has first been presented to the public entity and rejected in whole or in part. <u>Id.</u> §§ 905, 905.2, 945.4.  Failure to timely present a claim for damages to a public entity bars a plaintiff from filing a lawsuit

22

1    against that entity.  <u>State of Cal. v. Super. Ct. (Bodde)</u>, 32

2    Cal. 4th 1234, 1245 (2004).  Before a cause of action may be

3    stated, a plaintiff must allege either compliance with this

4    procedure or circumstances excusing noncompliance.  <u>Id.</u>  The

5    claim must include, <u>inter alia</u>, "[t]he name or names of the

6    public employee or employees causing the injury, damage, or loss,

7    <u>if known</u>."  Cal. Gov't Code § 910(e) (emphasis added).  "The

8    purpose of these statutes is 'to provide the public entity

9    sufficient information to enable it to adequately investigate

10   claims and to settle them, if appropriate, without the expense of

11   litigation.'"  <u>Stockett v. Ass'n of Cal. Water Agencies Joint</u>

12   <u>Powers Ins. Auth.</u>, 34 Cal. 4th 441, 446 (2004) (quoting <u>City of</u>

13   <u>San Jose v. Super. Ct.</u>, 12 Cal. 3d 447, 455 (1974)).

14        Defendants complain that plaintiff did not adequately

15   file a government claim form because her claim included only

16   Aquaviva, Thompson, and "others known to CDRC [sic], High Desert

17   State Prison" and alleged that "[a]dministration caused the memo

18   to drafted [sic] knowing it was false, published it, then

19   attempted to retract it after publication."  (Defs.' Mem. of P. &

20   A. in Supp. of Mot. to Dismiss FAC at 28.)  Defendants thus move

21   to dismiss the defamation claim against Armaskus on the ground

22   that he was not named in plaintiff's tort claim regarding the

23   memorandum.

24        "As the purpose of the claim is to give the government

25   entity notice sufficient for it to investigate and evaluate the

26   claim, not to eliminate meritorious actions, the claims statute

27   'should not be applied to snare the unwary where its purpose has

28   been satisfied.'"  <u>Stockett</u>, 34 Cal. 4th at 446 (citation

23

1  omitted) (quoting <u>Elias v. San Bernadino Cnty. Flood Control</u>

2  <u>Dist.</u>, 68 Cal. App. 3d 70, 74 (4th Dist. 1977)).  When a claim is

3  deficient in some way, the doctrine of substantial compliance may

4  validate the claim "if it substantially complies with all of the

5  statutory requirements . . . even though it is technically

6  deficient in one or more particulars."  <u>Santee v. Santa Clara</u>

7  <u>Cnty. Office of Educ.</u>, 220 Cal. App. 3d 702, 713 (6th Dist.

8  1990).  "The doctrine is based on the premise that substantial

9  compliance fulfills the purpose of the claims statutes, namely,

10  to give the public entity timely notice of the nature of the

11  claim so that it may investigate and settle those having merit

12  without litigation."  <u>Id.</u>  The doctrine cannot, however, "cure

13  total omission of an essential element from the claim or remedy a

14  plaintiff's failure to comply meaningfully with the statute."

15  <u>Loehr v. Ventura Cnty. Cmty. Coll. Dist.</u>, 147 Cal. App. 3d 1071,

16  1083 (2d Dist. 1983).  "The test for substantial compliance is

17  whether the face of the filed claim discloses sufficient

18  information to enable the public entity to make an adequate

19  investigation of the claim's merits and settle it without the

20  expense of litigation."  <u>Connelly v. Cnty. of Fresno</u>, 146 Cal.

21  App. 4th 29, 38 (5th Dist. 2006).  Failure to amend a claim

22  "shall not constitute a defense to any action brought upon the

23  cause of action for which the claim was presented if the court

24  finds that the claim as presented complied substantially with

25  Sections 910 and 901.2 . . . ."  Cal. Gov't Code § 910.6(b).

26        Plaintiff's claim substantially complied with the Tort

27  Claims Act and thus her defamation claim against Armaskus is not

28  barred.  The claim clearly gave defendants enough information to

1  investigate its merits.  Defendants' investigation apparently
2  uncovered Armaskus's involvement with the memorandum, since they
3  revealed that fact in their original anti-SLAPP motion to strike,
4  leading plaintiff to amend her complaint to include Armaskus in
5  the defamation claim.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss
6  Pl.'s FAC at 28:13-16.)  Thus, the court will not dismiss
7  plaintiff's defamation claim against Armaskus.

8          IT IS THEREFORE ORDERED that defendants' motion to
9  dismiss be, and the same hereby is, GRANTED with respect to
10 plaintiff's due process claim under § 1983 and plaintiff's
11 defamation claim against defendant Thompson and DENIED in all
12 other respects.

13         Plaintiff has twenty days from the date of this Order
14 to file an amended complaint, if she can do so consistent with
15 this Order.

16 DATED:  November 10, 2010

18 WILLIAM B. SHUBB
19 UNITED STATES DISTRICT JUDGE

25